Good morning, Illinois Appellate Court. First District Court is now in session. Fourth Division, the Honorable Robert E. Gordon presiding. Case number 17-3135, People v. Joaquin Savage. Okay, good morning to everyone. Would the lawyers who are going to argue the case please introduce themselves to the court? My name is Connor Morley from the Office of the State Appellate Defender and I represent Joaquin Savage. Assistant States Attorney Tyler Cox on behalf of the people of the state of Illinois. Okay, as to the appellant, are you going to reserve some time for rebuttal? Yes, Your Honor. How much time? Maybe three minutes. Okay, well let's proceed with your argument. Okay, thank you. Good morning, Your Honors. May it please the court, my name is Connor Morley and I represent Joaquin Savage. Joaquin's pro se post-conviction petition stated an arguable claim that Miller analysis applies to his case and as a result, this court should advance his petition to the second stage. In People v. Harris, the Illinois Supreme Court heard a proportionate penalties clause similar to this one for an emerging adult on direct appeal. The Harris court ultimately denied that claim and found that the petitioner, I'm sorry, the emerging adult didn't plead enough facts to determine whether the as-applied challenge applied to that defendant's case. However, it suggested that the PC Act would be a way to get those facts, the necessary facts, pled and ultimately determine the issue. This court applied Harris and Johnson and Ruiz recently when two emerging adults filed or requested leave to file a successive petition. The emerging adults in those cases are 18 and 19. This court ultimately reversed the trial court's order dismissing their leave to file successive petition and reiterated what Harris said. Because the emerging adults were not juveniles, the Miller analysis did not apply to them as a matter of law, but they should have been able to present the facts necessary to determine whether the Miller analysis would apply to their case. This court was very clear, so that was a different standard. As I said, it was a successive petition, so it was cause and prejudice as opposed to the standard at the first stage. However, the relief that's granted was the same, there is the same. This court was very clear in what it granted in Johnson and Ruiz. It didn't hold that Miller applied to the petitioner's case. It merely held that the petitioner should have had the chance to plead the necessary facts to the trial court and determine whether the Miller analysis applied to this case. And that's the same thing here, except we're at the first stage, so the standard is even lower. Here, Joaquin's petition only should have been dismissed if it was frivolous and patently without merit or based on fanciful factual allegations, which it was not. Joaquin alleged that he was 22 years old when he committed the crime and was sentenced to 85 years. He also alleged that he grew up in Lawndale where he was exposed to crime and there was a lot of gang activity in the neighborhood. He alleged that he was influenced by these gang members and that they pressured him into crime and drugs and violence. He also alleged that he had been addicted to drugs since he was nine years old. So those are the facts that he actually pled in his petition. The PSI and the reason why second stage is necessary is because the PSI had a couple of other things that PC counsel could look into and further develop. One is that he was beaten when he was a child. The other one is that he spent, forgive me here, he spent 39 days, I believe, at Heartgrove Hospital for a psychiatric, he was getting psychotherapy. So he was getting psychotherapy for 39 days at Heartgrove Hospital. These are things, you know, that certainly the stay at Heartgrove Hospital could absolutely have an impact on his further be pursued by PC counsel. You know, the beatings, it's really difficult to tell, you know, if it was just a cord, it probably didn't impact his actual brain development, aside from, you know, just the facts that he was being beaten, that I'm sure that doesn't help brain development. But there could also be things like, you know, if there was blunt trauma to his head, if he ever sustained concussions because of the beatings or anything like that, those could all be added to the petition at second stage. So where he can make the argument to the court that the Miller analysis applies to his case. The state argues that this court should create a cutoff age at 20 or 21, should create a cutoff age where emerging adults cannot argue that the Miller analysis applies to their case. This request, it both ignores the standard of review at the first stage, and it also cuts against the underlying principles of Miller. First, as I stated, if Joaquin's petition is not based on fanciful factual allegations or indisputably meritless legal theory, then his petition should be advanced to the second stage. Because no court has held that a 22-year-old cannot attempt to avail themselves of the Miller analysis, then his meritless legal theory, and it should be advanced. The fact that the state is asking this court to create a law right now and use that law to dismiss his petition reflects the fact that state Joaquin's issue in his petition is at least arguable. The second thing is that really drawing bright line rules cuts against what we're trying to accomplish with these Miller cases. We as a society recognize that the goals of sentencing can't be accomplished on juveniles and emerging adults whose brains aren't underdeveloped or whose brains are underdeveloped. Things like deterrents just don't work because they don't consider what can happen. Sorry, I'm blanking on the word here, but they don't consider the outcome. They only consider what's actually happening. So they're not going to be able to consider, oh, I might get a really harsh sentence. Therefore, I shouldn't commit this crime. So that's going to be true no matter where this court draws the line. If the court draws the line at 20, there's going to be someone who's 20 in one day who's exactly similarly situated to the person on the other side of the line, but they're not going to be able to argue that. So I think the better way to do it, instead of just drawing a line and saying no one over this can do it, is to consider the age as one part of the totality of the defendant and allow the defendant to try to make the argument to the trial court that the Miller analysis applies to their case. So as a result here, Joaquin was 22 years old, along with all the other facts that he pled and the studies saying that people's brains develop until they're 25. His case was at least 22 years old. So I'm going to turn it over to any questions that this court has. Otherwise, I'll save my further remarks for rebuttal. Justice Hall, do you have any questions? Justice Reyes, do you have any questions? Yeah, I just have one question. So I understand your argument is that the trial court did not consider the addiction to drug addiction, but attached to the PSI, according to the record, was the hospital discharge report, which indicated that the defendant had been using drugs since the age of nine, had been abusing drugs, and that was part of the PSI. So didn't the trial court actually consider that fact when sentencing took place? It is true that that was part of the PSI. However, first, at this stage, I think we're, as this court put it in Johnson and Ruiz, we're putting the cart ahead of the horse by considering what happened at sentencing. Here, we're really just, you know, Joaquin is just asking for the chance to get an attorney to help him plead all the facts necessary to establish that Miller applies to his case. While it is true that that was in the PSI, also, when we look at the sentencing hearing, you know, we see that the judge said Joaquin is not the worst of the worst. He's not incorrigible. So, you know, when we look at the sentencing hearing, even though some of that stuff was in the PSI, it's clear that it didn't comply with Miller because the judge made the finding that he wasn't incorrigible. Yes, still sentenced him to the de facto life sentence. This course also held in, oh, Harvey. This court held in Harvey that just an awareness of the defendant's age and what's in the PSI is not evidence that they consider the Miller factors and the characteristics associated with being a youth or, you know, being youthful. Okay. Any further questions? No. Okay. Let's hear from the state. Thank you. May it please the court. Assistant State's Attorney Tyler Cox on behalf of the people of the state of Illinois, respectfully asking this court to affirm the circuit court's summary dismissal of petitioner's post-conviction petition. Petitioners claim that his discretionary 85-year sentence for crimes he committed when he was a 22-year-old adult were unconstitutional, has no basis in law or in fact under either the eighth amendment or the proportion of penalties clause. Therefore the circuit court properly dismissed his petition as frivolous and patently without merit. First petitioner's eighth amendment claim fails where Miller protections under the eighth amendment apply only to juveniles. This has repeatedly been emphasized by both the Illinois Supreme Court as well as this court in very recent decisions. Petitioner points to no cases where an Illinois court has recognized that a life sentence imposed on an adult offender, his age, is unconstitutional under the eighth amendment. Turning next to the petitioner's proportionate penalties challenge, that fails as a matter of law because adult defendants cannot claim Miller-based protections to challenge their petitioner claims that the Miller constitutional concerns that typically apply to juveniles sentenced to mandatory life sentences also apply to him, a 22-year-old adult, sentenced to a de facto life sentence in this case. Petitioner bases this claim only on general research that teenagers brains continue to mature. Petitioner alleges no specific facts of his own immaturity that were not already considered by the circuit court in this case. As the circuit court correctly recognized when it summarily dismissed the post-conviction petition, Miller was not applicable to this case because the petitioner was a young adult offender who received a discretionary sentence. The concepts discussed by the Illinois Supreme Court in both Harris and Thompson do not support an adult defendant's as applied constitutional attack on a discretionary sentence. Those cases involve constitutional attacks on mandatory life sentencing schemes, and those attacks were, as applied proportionate penalties claims, premised on the inability of the sentencing court to tailor a sentence based on the individual characteristics of the defendant. The Illinois Supreme Court analysis in these cases was founded on the Miller principle that mandatory life sentencing schemes unconstitutionally prevented the sentencing courts from considering individual circumstances of juveniles, or in the young adults. This reading of Harris and Thompson is supported by this court's decisions in house and in handy. In house, obviously, it was a 19-year-old defendant sentenced to a mandatory life sentence term for his role as a lookout in the crimes. This court extended the Miller principles to the defendant under the proportionate penalties clause based on the special circumstances of that case and of that defendant. Specifically, this court pointed out that the sentencing court could not consider any of the mitigating factors because of the mandatory nature of the sentencing scheme. This court emphasized the lack of discretion afforded to the sentencing court, especially where the defendant was a young adult over 18 but not fully mature, and pointed out the sentencing court could not consider the goal of rehabilitation, especially in light of defendant's age, his role in the crimes, as well as his background. In handy, meanwhile, there was an 18-and-a-half-year-old defendant who was sentenced to a discretionary 60-year term and was an active participant in the case, or in the crime, excuse me. This court found that house was inapplicable to handy because of the defendant's active participation, which the sentencing court was able to consider along with the defendant's age, his background, social circumstances, and any other factors. This case is obviously more akin to handy where, unlike in Thompson, Harris, and house, the sentencing court in this case was allowed discretion to consider the petitioner's mitigation, including his age, including his role in the crimes, social, excuse me, social circumstances, his background, and all the other factors. Therefore, petitioner's proportionate penalty claim also fails as a matter of fact. The circuit court in this case considered defendant's age. He was a 23-year-old adult at the time he committed these offenses. It also considered the petitioner's crimes. He was the sole shooter in this case. The other individual was simply a lookout, and he had robbed the same individuals before. He also considered the petitioner's social circumstances, including his drug use at a young age, which was obviously, as your honor pointed out, included in the PSI or attached to the PSI. It also included information on defendant's gang involvement at a young age, as well as through the time of the crime. There was nothing the circuit court was prevented from considering and nothing that the circuit court did not consider in this case, and therefore, petitioner's post, excuse me, proportionate penalties claim fails. While the people disagree with the holdings in the recent cases of Ruiz and Johnson, which was cited by the petitioner in his reply brief, as well as a similar case of Minifield, these cases are distinguishable easily by the ages of the litigants in those cases. In those cases, they were 18 and 19 respectively, and in this case, obviously, the defendant was a 22-year-old adult when he committed these crimes. Further, the decisions in those cases were based on the litigants' ages without specific connection to the evolving brain science. The Illinois Supreme Court has refused to accept that even an offender age 18 or 19 necessarily possesses the same qualities as a juvenile. The Illinois Supreme Court has repeatedly emphasized that to raise a Miller-based proportionate penalties claim, a young adult offender must offer some facts to prove he was functionally the same as a juvenile when he committed the crimes. He must do more than just point to his age alone. The Illinois Supreme Court in Thompson, in Holman, as well as most recently in Harris, have all made clear that a young adult offender must do more than simply rely on his age, coupled with general evolving brain science. He must show how it applies to the defendant's specific facts and circumstances. Petitioner did not do so here, and thus his proportionate penalties claim fails as a matter of fact and law. Simply put, petitioner in this case urges the circuit court to do what the Illinois Supreme Court has never done, and that is to find that Miller-based constitutional protections afforded to juveniles apply to him, a 22-year-old adult offender, simply because of his age. The circuit court properly refused to do so without guidance from the Illinois Supreme Court. The petitioner's eighth amendment and proportionate penalties claims therefore had no basis in fact or in law, and the circuit court properly dismissed his petition as frivolous and patently without merit. This court should affirm the circuit court's summary dismissal of petitioner's post-conviction petition. Let me ask you this, should we as the appellate court presume that a trial judge in the sentencing considers everything in the PSI? Yes, I believe there's plenty of case law indicating that it's presumed the trial court considered all relevant factors unless demonstrated otherwise, and in this case obviously it was attached to the PSI, the judge is aware of it, he mentions it, so I think it's more than safe to assume that he was aware of the facts. What's your best case on that proposition? At the top of my head, Judge, I do not have that in front of me, however I believe there's a long, long line. Any questions by Justice Hall? What about the fact that he was beaten and the fact that he was held in hard grove for 39 days are all of those facts in the PSI? They are all, the hard grove, everything like that is all in, contained in the documents that were presented to the sentencing court before it crafted its original sentence, yes, and obviously the court had the discretion to consider that and did consider that in doing so. You say he did consider it? Yes. How do you know that? Because as I said, it's presumed to consider all relevant. You assume that he read it? Correct, it was not demonstrated otherwise. The court did not mention that it had gone in depth in terms of trying to find out the various things that had happened to this particular defendant, is that correct? He did not mention it on the record. He did not list every single thing in the PSI and the reports, that is correct, nor do I believe he was responsible for doing so. I don't think he was mandated to do so. Says who? I believe there's plenty of cases I don't have out to see in front of me, but well-established case law, they don't have to set out every single factor considered when crafting a sentence. I thought that was recent case law, that because the judge had not gone into depth, into sufficient depth, that that was insufficient in terms of Miller. Very well, maybe I'm not aware of the most recent case law, your honor, that is correct. Okay, any further questions? No further questions. Okay, let's hear the rebuttal. Very quick in rebuttal. I believe what Justice Hall is referring to is that Harvey case, so even though these facts were presented to the court, there is no, the Harvey case stated that, you know, just because they were presented to the court doesn't mean that they considered the Miller framework and what those meant towards this young person's development of their brain, and I think that is important to note in the context of all of this. Everything that the sentencing court considered when sentencing Jaqueen, the Miller context was not available to them. The studies weren't done, Miller hadn't come out, so really they were considered, the judge wasn't considering these factors as factors about brain development, he was considering them as factors of mitigation, you know, about why the sentence should have been lowered for other reasons, you know, as general mitigating factors, not about brain development, you know, in the Miller context. The other, one of the other things I wanted to mention about the state's case is really the reason the state's case is, the state's argument is not persuasive is because really just ignores the standard here. The, Jaqueen is not asking this court to apply a Miller case to a 22-year-old defendant. Jaqueen is asking this court to give him a chance to be appointed an attorney so that he can present all the facts and make the argument to the trial court that the Miller analysis should apply to his case. With that being said, again, the standard here is frivolous and patently without merit. There is no case that says a 22-year-old cannot attempt to avail themselves of the Miller analysis and it's therefore does not frivolous and patently without merit. Just the one, one other thing I wanted to point out is that the cases that the state cites and Handy and Holman and, you know, the other ones that, I'm sorry, maybe not Holman, at least Handy and Thompson, those cases are not first, they're not first stage cases, they're leave to file cases. So the standard there is necessarily higher than it would be here. And again, there's no case saying that a 22-year-old cannot attempt to avail themselves of Miller. And as a result, the state or the petition is not frivolous or patently without merit. For those reasons, Jaqueen and myself request that this court advance his petition to the second stage where he can have an attorney help him develop his claim that the Miller analysis applies to his case. Thank you. Okay. Any further questions? No. All right. Well, thank you. You've given us an interesting case and you'll have an order or an opinion shortly. Report will be temporarily adjourned to switch panels.